**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SALLY A. RILEY,

                Plaintiff,

vs.                                                    Case No. 6:11-cv-1437-Orl-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Sally A. Riley ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "rheumatoid arthritis, fibromyalgia, and deteriorated disc," as well as "too much pain." Transcript of Administrative Proceedings (Doc. No. 14; "Tr."), filed November 15, 2011, at 75 (capitalization omitted). On December 20, 2006, Plaintiff filed applications for SSI and DIB, alleging an onset date of May 23, 2006. Tr. at 128-31, 134-35. Plaintiff's applications were denied initially, see Tr. at 68-70, 71-73, and were denied upon reconsideration, see Tr. at 78-79, 80-81.

On June 22, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 33-61. At the time of the hearing,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed November 15, 2011; Reference Order (Doc. No. 16), entered November 16, 2011.

Plaintiff was fifty-one (51) years old. Tr. at 37. The ALJ issued a Decision on July 28, 2010, finding Plaintiff not disabled through the date of the Decision. Tr. at 17-28. On June 24, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 29, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal. See Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 22; "Pl.'s Br."), filed March 19, 2012. First, Plaintiff argues "the ALJ erred in determining that [ Plaintiff] has the residual functional capacity [("RFC")] to perform light work with some additional limitations when the treating physician opined that [ Plaintiff] could not perform a full range of sedentary work, and some of [ Plaintiff's] conditions were not properly considered." Pl.'s Br. at 2; see also id. at 10-16. Second, Plaintiff asserts that the ALJ's reliance "on the testimony of the [VE] after failing to define the meaning of a 'sit/stand option' and posing a hypothetical question that did not adequately reflect the limitations of [ Plaintiff]" was improper. Id. at 3; see also id. at 16-18. Third, Plaintiff contends "the ALJ erred in finding that [ Plaintiff] was 'not credible.'" Id. at 3; see also id. at 18-19.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-27.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since May 23, 2006, the alleged onset date." Tr. at 19 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: affective disorder, anxiety, rheumatoid arthritis and fibromyalgia." Tr. at 19 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

The ALJ determined Plaintiff has the RFC to perform light work with additional limitations as follows:

> [Plaintiff] requires a sit/stand option and needs to avoid ladders, unprotected heights and the operation of heavy moving machinery.  [ Plaintiff] also needs a low stress work environment and is limited to work involving simple tasks.  In addition, [ Plaintiff] can occasionally bend, crouch, kneel, stoop, squat or crawl and needs to avoid the push-pull of arm controls.

Tr. at 21 (emphasis omitted).  At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "nursery school attendant," "deli cutter slicer," and "department manager."  Tr. at 26 (emphasis and citation omitted).  At step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found "there are jobs that exist in significant numbers in the national economy that [ Plaintiff] can perform," Tr. at 26 (emphasis and citation omitted), including "Routing Clerk," "Microfilm Mounter," and "Order Caller," Tr. at 27 (emphasis and citation omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . . from May 23, 2006, through the date of th[e D]ecision."  Tr. at 27 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial

evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises three issues on appeal.  Each is discussed in turn.

### A.  RFC/Treating Physician

#### 1. Parties' Positions

Plaintiff argues "the ALJ erred in determining that [Plaintiff] has the [RFC] to perform light work with some additional limitations when the treating physician opined that [Plaintiff] could not perform a full range of sedentary work, and some of [Plaintiff's] conditions were not properly considered." Pl.'s Br. at 2; see also id. at 10-16.  Plaintiff indicates that the crux of this issue turns on whether the ALJ properly analyzed the opinion of Plaintiff's treating physician, Bruce G. Rankin, D.O. ("Dr. Rankin"). Id. at 11.  More specifically, Plaintiff contends the ALJ improperly "rejected the opinion of Dr. Rankin," because "the ALJ fail[ed]

to understand the nature of fibromyalgia"; "the ALJ seem[ed] to indicate that he does not give weight to the opinion of Dr. Rankin because he is a 'family doctor'"; and the ALJ provided more weight to the opinion of an examining physician than to Dr. Rankin's opinion. Id. at 14-15.

On the other hand, the Commissioner notes first that "the ALJ did not 'reject' Dr. Rankin's opinion, but gave it 'little weight' because the evidence, including [Dr. Rankin's] own treatment records did not bolster nor support it." Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem."), filed May 17, 2012, at 9. The Commissioner also points out that Dr. Rankin's findings were "generally normal . . . with only moderate abnormalities, complaints of moderate pain, and the ability to exercise." Id. at 6. The Commissioner contends that these generally normal findings are inconsistent with and fail to support Dr. Rankin's May 2010 opinion; therefore, according to the Commissioner, the ALJ properly discounted Dr. Rankin's opinion. See id. at 8-9.

### 2. Dr. Rankin

The record contains treatment notes of Dr. Rankin (or one of Dr. Rankin's associates at the Family Practice of West Volusia) dated January 6, 2006 through April 12, 2010. See Tr. at 230, 329-32. The opinion at issue was rendered by Dr. Rankin on May 5, 2010, when Dr. Rankin completed a form entitled, "Medical Source Statement of Ability to do Work-Related Activities (Physical)" ("May 2010 form"). Tr. at 335-37. On the May 2010 form, Dr. Rankin opined that Plaintiff can occasionally and frequently lift and/or carry less than 10 pounds; Plaintiff can stand and/or walk for less than 2 hours in an 8 hour workday; and she must periodically alternate between sitting and standing to relieve pain or discomfort. Tr.

at 335-36. Dr. Rankin further opined that Plaintiff is limited in pushing and/or pulling with her upper extremities. Tr. at 336. As medical/clinical findings to support his opinion, Dr. Rankin indicated Plaintiff has "joint and muscle pain widespread which requires frequent position change and weakness." Tr. at 336. Dr. Rankin also found that Plaintiff can never climb or balance, but she can occasionally kneel, crouch, crawl, and stoop; Dr. Rankin did not list any medical/clinical findings in support of these limitations. Tr. at 336. Dr. Rankin imposed the following limitations because of "muscle fatigue:" Plaintiff can occasionally reach, handle, finger, and feel. Tr. at 336. Dr. Rankin left blank the part of the form asking for the dates for which the limitations pertain. Tr. at 337.

A review of Dr. Rankin's treatment notes shows Plaintiff complained of pain on various occasions in her neck, back, shoulders, hands, wrist, elbow, forearms, fingers, knees, and joints. See, e.g., Tr. at 208, 222, 232, 233, 272, 276, 280, 286, 312, 315. Plaintiff has been diagnosed with, inter alia, anxiety, depression, rheumatoid arthritis, and fibromyalgia.[3] See, e.g., Tr. at 207-09, 229. According to Dr. Rankin's notes, Plaintiff consistently had normal range of motion in her spine and right upper extremity. See Tr. at 267, 270, 273, 277, 281, 287, 313, 316, 320, 324, 331. She consistently exhibited tenderness to palpitation in her right upper extremity and occasionally exhibited tenderness in her left upper extremity–but the tenderness in both extremities was either classified as "moderate" or had no severity level listed at all. See Tr. at 219, 267, 270, 273, 277, 281, 287, 313, 316, 320, 324, 331. On or about August 2, 2008, Plaintiff began exhibiting

---

[3] Dr. Rankin first diagnosed Plaintiff with fibromyalgia on September 13, 2007. Tr. at 207-09.

tenderness to palpitation on her spine. See Tr. at 270; see also 267, 313, 316, 320, 324, 331. Other than sporadic notes recommending that Plaintiff see a rheumatologist or "get labs," Tr. at 287, 316, 321, Dr. Rankin did not suggest any long-term treatment plans or impose any restrictions on Plaintiff, see Tr. at 207-23, 225, 227-37, 265-83, 285-88, 311-34.

### 3. Legal Framework

The Regulations instruct ALJs how to weigh the medical opinions of treating physicians[4] properly. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

---

[4] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

The United States Court of Appeals for the Eleventh Circuit recognized in Moore that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on a individual's described symptoms." Moore, 405 F.3d at 1212. For this reason, a treating physician's opinion "can be particularly valuable in fibromyalgia cases, where objective evidence is often absent[.]" Id. Nevertheless, an ALJ can discount a treating physician's opinion regarding the effects of fibromyalgia as long as the ALJ articulates good cause. Id. Indeed, the Eleventh Circuit approved of an ALJ doing so in Moore. Id. (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence).

### 4. Analysis

In his Decision, the ALJ comprehensively summarized Dr. Rankin's treatment notes and Dr. Rankin's opinion on the May 2010 form, see Tr. at 22-24, and the ALJ recognized that Dr. Rankin was a "treating source" and a "family doctor who has generally treated

[ Plaintiff] every 3-5 months," Tr. at 24-25.  The ALJ determined that the severe limitations imposed by Dr. Rankin on the May 2010 form "are neither bolstered nor supported by the record evidence, including Dr. Rankin's own treatment records." Tr. at 24.  The ALJ explained that although Dr. Rankin attributed Plaintiff's alleged physical limitations to muscle and joint pain on the May 2010 form, "Dr. Rankin's examination findings are generally remarkable for only moderate tenderness in the spine and upper extremities." Tr. at 25. The ALJ also stated that "Dr. Rankin's progress notes routinely show stable joints, no pain on joint motion and full range of motion in the spine and extremities on examination."  Tr. at 25.  Upon review of the record, the undersigned finds that the ALJ properly discounted Dr. Rankin's opinion by finding that his opinion is inconsistent with his own treatment notes. See Phillips, 357 F.3d at 1240-41.  This finding is supported by substantial evidence.

Additionally, in the ALJ's discussion regarding the discounting of Dr. Rankin's opinion, the ALJ addressed the opinion of Maria R. Gonzalez, M.D. ("Dr. Gonzalez"), an examining physician, and the opinion of Nicolas Bancks, M.D. ("Dr. Bancks"), a non-examining state agency medical consultant.[5]  Tr. at 25.  Regarding Dr. Gonzalez's opinion, the ALJ observed that Dr. Gonzalez did not impose any "significant limitations in [ Plaintiff's] ability to sit, stand or walk"; and "[a]lthough some decreased grip and motor strength was observed in the upper extremities, Dr. Gonzalez noted [ Plaintiff] did not give good effort during the examination and exhibited exaggerated pain responses that were inconsistent with examination findings." Tr. at 25.  The ALJ assigned "[s]ome weight" to Dr. Gonzalez's

---

[5] Although the ALJ did not refer to Dr. Bancks by name, the ALJ's citation to the record and explanation of the findings made by a "State agency medical consultant" clearly point to Dr. Bancks's opinion.

opinion. Tr. at 25. In addition to the specific findings cited by the ALJ, Dr. Gonzalez also indicated that "[m]any of [her] findings were normal" and she is "unable to see significant limitations." Tr. at 247. Dr. Gonzalez did indicate that she did not "have a correct ESR level which would help [her] to correlate how bad" the symptoms of Plaintiff's polymyalgia rheumatica were, but Dr. Gonzalez did not indicate that not having a correct ESR precluded her from rendering an informed decision. Tr. at 247. As to Dr. Bancks's opinion, the ALJ only noted that Dr. Bancks's assessment "was compatible with light work activities with occasional postural maneuvers and no concentrated exposure to hazards." Tr. at 25. The ALJ's observations of these two physician's opinions in discussing his bases for not affording substantial weight to Dr. Rankin's opinion was proper. Although an ALJ generally gives more weight to opinions of treating physicians, see Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987), here the ALJ showed good cause for discounting Dr. Rankin's opinion. The ALJ's reasoning is supported by substantial evidence.

In challenging the ALJ's reasoning, Plaintiff relies on her diagnosis of fibromyalgia, noting that fibromyalgia typically does not result in any objective findings. However, the ALJ did not base his decision to discount Dr. Rankin's opinion on a lack of objective findings or on the basis of Plaintiff's subjective complaints of pain. See generally Moore, 405 F.3d at 1211-12. Therefore, Plaintiff's argument is misplaced.

Plaintiff additionally challenges the ALJ's reasoning by stating that "it is almost incredible that the ALJ seems to indicate that he does not give weight to the opinion of Dr. Rankin because he is a 'family doctor.'" Pl.'s Br. 14. The specialization of a physician is one of the factors ALJs consider in determining the weight to assign a medical opinion. See 20

C.F.R. § 404.1527(c).  It is not apparent from the ALJ's Decision that he discounted Dr. Rankin's opinion because he is a family doctor, a point Plaintiff does not seem to quarrel with given her argument is that "the ALJ seems to indicate . . . ."  Pl.'s Br. at 14.  Rather, after articulating a good cause basis for discounting the opinion, the ALJ considered the specialization of the physician, as he is permitted to do.  See 20 C.F.R. § 404.1527(c).

In sum, the ALJ detailed the weight assigned to Dr. Rankin's opinion, and he articulated specific reasons amounting to good cause for discounting the opinion.  See Phillips, 357 F.3d at 1240-41.  The ALJ properly considered Dr. Rankin's opinion, and substantial evidence supports the ALJ's reasoning.

### B. VE Testimony

Plaintiff's second assignment of error is directed at the ALJ's reliance on the VE's testimony.  See Pl.'s Br. 3, 16-18.  Plaintiff asserts that the hypothetical presented to the VE was flawed for two reasons: (1) the ALJ "did not adequately define the meaning of a sit/stand option"; and (2) the ALJ did not account for Plaintiff's moderate difficulties with regard to concentration, persistence, or pace.  Id. at 17.

The Commissioner, responding, notes that "the VE did not indicate any confusion about the parameters of" the sit/stand option.  Def.'s Mem. at 15.  The Commissioner cites to Williams v. Barnhart, 140 F. App'x 932, 936-37 (11th Cir. 2005) (unpublished), for the proposition that "even where an ALJ failed to specify the exact frequency with which a claimant needed to change his sit/stand position, the reasonable implication was that it was at his own volition."  Def.'s Mem. at 15.  As to Plaintiff's second reason, the Commissioner

contends that the ALJ's limitation of a "low-stress environment with simple tasks" accounted for Plaintiff's moderate limitations in concentration, persistence, or pace. Id. at 16.

### 1. Sit/stand option

At the hearing, the ALJ specifically included in the hypothetical to the VE that Plaintiff "needs a sit/stand option." Tr. at 53. After opining that Plaintiff could perform the jobs of "Routing Clerk," "Microfilm Mounter," and "Order Caller," the VE indicated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), with the exception of the sit/stand option. Tr. at 55. The VE explained that the "DOT does not identify [a] sit/stand option." Tr. at 55. Rather, the VE's testimony regarding the sit/stand option available in the jobs identified was "based on [the VE's] 25-years' experience, knowledge of those jobs and how they typically can be performed in the regional and national economy." Tr. at 55.

While the ALJ did not identify the frequency with which Plaintiff would need to change positions, the ALJ specifically included in the hypothetical a sit/stand option. The "reasonable implication" of imposing a sit/stand option is that Plaintiff would be able to change her position at her own volition. See Williams, 140 F. App'x at 936-37. The VE, an expert on the types of jobs a person can perform, explicitly indicated that his opinion with respect to the sit/stand option was based on his twenty-five years of experience and knowledge of the types of jobs he identified. No error can be identified in this respect.

### 2. Concentration, Persistence, and Pace

The ALJ included in the hypothetical to the VE that Plaintiff "needs a low-stress work environment; [and] she needs simple tasks." Tr. at 53. In Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011), the Court found error in an ALJ's decision

because the ALJ failed to account for a plaintiff's moderate limitations in maintaining concentration, persistence, and pace.  Here, however, the specific inclusion of "a low-stress work environment" and "simple tasks" accounts for Plaintiff's moderate limitations in concentration, persistence, and pace.  See Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871 (11th Cir. 2011) (unpublished) (finding that the limitations of simple tasks and only being able to concentrate for brief periods of time accounted for the plaintiff's moderate difficulties in concentration, persistence, and pace); see also Dawson v. Comm'r of Soc. Sec., No. 6:11-cv-1128-ORL-28, 2012 WL 1624267 (M.D. Fla. May 9, 2012) (unpublished) (collecting cases which recognize that the inclusion of limitations such as work involving simple tasks and/or simple instructions properly accounts for moderate limitations in concentration, persistence, and pace).  Additionally, in his Decision, the ALJ found that while Plaintiff "testified she had problems with concentration and memory[,] . . . no significant cognitive deficits have been found upon mental status examination." Tr. at 20.  Plaintiff does not take issue with that finding.  After reviewing the ALJ's Decision and the applicable legal authority, the undersigned concludes that the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.

In sum, the ALJ posed a proper hypothetical to the VE consisting of all of Plaintiff's impairments.  The VE is an expert on the types of jobs a person can perform, and the ALJ was justified in relying on the VE's testimony.  See Phillips, 357 F.3d at 1240.  Therefore, no error is found.

### C. Plaintiff's Credibility

As to the third issue raised by Plaintiff, she contends that "the ALJ erred in finding that [Plaintiff] was 'not credible.'" Pl.'s Br. at 3; see also id. at 18-19. Plaintiff argues that the ALJ merely made this conclusion without providing "accurate and specific findings as to the credibility of the Plaintiff." Id. at 19. The Commissioner, on the other hand, cites various reasons the ALJ provided for finding Plaintiff incredible. Def.'s Mem. at 13-14.

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications[;] and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

After detailing Plaintiff's testimony at the hearing, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the" RFC. Tr. at 22. The ALJ found Plaintiff's "assertions as to pain and limitation to be far in excess of the medical and other

evidence of record." Tr. at 25.  In support of that finding, the ALJ cited to Dr. Gonzalez's examination findings, which were largely normal and imposed no significant limitations.[6] The ALJ also referenced Dr. Rankin's treatment notes, which show "only moderate findings of tenderness, stable joints, no pain on joint motion and full range of motion in the spine and extremities."  Tr. at 25.  The ALJ also indicated that "[d]espite [ Plaintiff's] testimony regarding daytime napping and medication side effects, Dr. Rankin did not attribute any inability to sustain or complete activities to fatigue or medication side effects."  Tr. at 25 (citing Tr. at 337).  Moreover, the ALJ found that Plaintiff "reported activities of daily living compatible with competitive work such as housework, driving, shopping and visiting with her parents.  In addition, [ Plaintiff] testified she left her job as a department manager in 2006 only because she was to be relocated to a new store that was allegedly busier and there was no guarantee she would be given additional help."  Tr. at 25-26.

Contrary to Plaintiff's argument, the ALJ listed numerous explicit and adequate reasons for finding Plaintiff not credible.  See Wilson, 284 F.3d at 1225.  The reasons listed are supported by substantial evidence.  Therefore, the undersigned finds no error regarding the ALJ's credibility determination of Plaintiff.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence.  Accordingly, it is

---

[6] Here, again, the ALJ did not refer to Dr. Gonzalez by name.  However, the ALJ cited to Exhibit 3F in the record.  Exhibit 3F is Dr. Gonzalez's opinion that the ALJ previously discussed in detail in his Decision.

**ORDERED**:

1.	The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. §1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2.	The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 14, 2012.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jld
Copies to:
Counsel of Record